**Frank M. Gray, Appellant, v. Chicago & Northwestern Railway Company, Appellee.**

**Gen. No. 14,943.**

CONTRIBUTORY NEGLIGENCE—*failure to look and listen. Held,* that the plaintiff in this case, who was injured while crossing railroad tracks in an automobile, was guilty of contributory negligence in failing properly to look for passing trains.

Gray v. Chicago & Northwestern Ry. Co., 155 Ill. App. 428.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PICKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed April 8, 1910.

Statement by the Court. Oak Park avenue in Oak Park, Cook county, Illinois, a street running north and south, is crossed at or near grade by two tracks of the elevated railroad and 30 feet north thereof by two tracks of the defendant railroad. The elevated road keeps a flagman at the crossing; the defendant road has gates at the crossing operated with compressed air by a towerman from a tower about 100 to 150 feet west. Plaintiff lived in the neighborhood and was entirely familiar with the situation. About 6 P. M. on July 2, 1904, accompanied by his wife, he drove a single cylinder single seated runabout automobile north, at the rate of two or three miles an hour, across these tracks. As he approached, the flagman, whom he knew to be solely in the employ of the elevated railroad, first waved him to stop and, after an elevated train had passed, waved him to go ahead. As the defendant's gates were up, plaintiff drove his automobile up the slight incline of four or five feet in thirty toward the defendant's tracks. Plaintiff testified that while starting he looked up to see if the tracks were clear. There was nothing to obstruct his view, but he saw nothing and heard no bell or signal. He thereafter kept looking straight ahead of him. Just as he was passing the south gate, it came down on him, whereupon he put on full speed and crashed through the north gate, thereby escaping a train which was approaching from the west, but injuring himself by the contact with the north gate. He did not see the gates coming down but drove through them, thinking he could make it and get through. He testifies further that the train was moving slowly, that his front automobile wheels were on the south track as the south gate came down on him, and that the gates when down were on the level of his breast. The action of the south gate dazed him, but he realized his dangerous position and without looking to

see from what direction the train was coming, ran the auto at full speed onward.

On cross examination he testified: " * * * I looked straight ahead where I was going; if I had been looking at the gates I could not have run my car. I did not see any trains at the time nor after I went under the first gate. I was outside on the second gate before I saw the train, just outside of it, I could not time it, and was the first I saw of that train. I couldn't look to see if it was coming; I presumed it was coming by the gates hitting me on the head. I did not have blinders on; I never look to the right or left. I don't pay any attention to the right or left when crossing a railroad track when the gates are up. I don't look to see if a train is coming when the gates are up. I don't look to see if a train is coming when the gates are down. I didn't know any train was coming; I didn't know upon which track the train was coming and didn't try to ascertain upon which track the train was coming while I was going through. I didn't see any trains at that time and didn't try to stop my machine at any time. I didn't try to stop my machine but when that first gate struck me on the head I put on full speed. * * * I did not look to the right or left as I was going up the incline, I was guiding my machine. After I had started and got across the elevated tracks I did not look to the right or left because the gates were up the last time I saw them, and I did not look to the right or left as I came up the incline to the gates. I don't know how wide the street is, about fifty feet, something like that. I have gone over that crossing quite a number of times before but don't remember ever hearing a bell before on other occasions. I had been along there when the gates came down before and knew how they came down. * * * "

The court directed the verdict for the defendant.

Joseph Schneider, for appellant.

W. S. KIES and FREDERIC BURNHAM, for appellee.

MR. JUSTICE MACK delivered the opinion of the court.

We find no error in the action of the trial court in directing a verdict for defendant. In our judgment there is no more than a mere scintilla of evidence, either that defendant was negligent or that plaintiff exercised due care. If the train was approaching slowly, as plaintiff testifies, there is no negligence shown in its management; if the towerman had failed to lower the gates, plaintiff would doubtless have been struck by the train; we cannot find the slightest evidence either that he lowered them too soon or too late or in a negligent manner.

On the other hand, plaintiff's testimony demonstrates that while he may have looked for an approaching train while standing in front of the elevated train, he did not look for it while approaching defendant's tracks. Had he done so, he must inevitably have seen it as there was nothing whatsoever to obstruct his view. This was, in our judgment, under all the circumstances clearly such contributory negligence as justified a direction of a verdict of not guilty.

*Affirmed.*